Good morning, Your Honors. My name is Jesse Kadatek, and I represent LL Liquor. I would like to reserve three minutes, if I can. Your Honors, this case calls for a straightforward application of the Citicorp exception, which held that parties can contract around the default post-judgment interest provision in 28 U.S.C. 1961 if the contract shows a mutual intent to do so. So, the first thing we have to do is we have to look at what the contract says. To do that, because the District Court was exercising supplemental jurisdiction, we have to look at Montana's substantive rules of contract construction. The Montana Supreme Court has held for over 100 years that laws that exist at the time a contract is formed that are directed at the relationship between the parties become part of the contract as if they were actually written within the contract. So, the statute that LL Liquor believes controls the application of 18-1-404 in the Montana Code, and under Montana law, that statute is incorporated in the contract just as if it was written into the contract. So, with that said, we turn to what 18-1-404 says, which the parties dispute. However, there's four reasons why 18-1-404 shows that LL Liquor is the statute, which says that the state is liable for interest on a contract if it's subject to a good-faith dispute brought before a government agency or a court. The interest rate is 10% simple interest each year, whether due before or after a decision by a government agency or a court. Now, I confess I don't fully understand the state's argument here, but they don't think that the language that says whether due before or after a decision by a court means a judgment. We think it's straightforward enough as it stands right now. However, if we go back to the prior version of the statutes and we look at the statutory history, prior to a few years ago, the statute said in so many words that the 10% interest was due whether before or after a judgment. I wanted to ask you about 28 U.S. Code section 1961A, and it appears that we have ruled that section 1961 is mandatory in cases awarding post-judgment interest and that an exception exists only when the parties contractually agree to waive the application of section 1961. Why doesn't that defeat both your arguments that state law applies? Well, what Citicorp said is there has to be a contractual agreement on post-judgment interest. It didn't say in so many words that the parties have to include language in the contract that says they're explicitly waiving the application of 28 U.S.C. 1961. Well, in Citicorp, there was an explicit agreement as to the interest rate, which necessarily eliminated section 1961, but we don't have anything here. You're arguing about the interest rate that's to be applied, so Citicorp doesn't really address the situation we have here because there was a definite agreement in Citicorp about the interest rate that was to be applied, and therefore you didn't have to default to 1961, but we don't have an agreement here regarding the interest rate that is to be applied, so why don't we go back to the default in 1961? Well, I think I agree with you to the extent that the parties don't necessarily agree what the law requires in terms of what the post-judgment interest rate is under Montana law. However, before we get to that dispute, the threshold issue is what is in the contract, and that's the first step of Lola Licker's argument, and that's where we have to apply the substantive rules of Montana contract interpretation and construction, and that is where this rule that the law is existing at the time a contract is formed become part of the contract. So with that in mind, the way the would literally look at 18-1-404 and apply it as if it was included expressly in the contract. But you don't apply the substantive law unless you can get around section 1961, so it's kind of a circular argument because it appears to me that 1961 says, as interpreted by our court, says if you have not expressly put language in the contract that eliminates the application of section 1961, then by default it's there. So if you have to interpret and it's not explicitly in the contract, I'm not sure that city court helps you. I understand what you're saying, your honor, but I don't, city court, the contracts and the USC 1961, it just had a provision that there was going to be a interest rate that applied after judgment. And again, Lola Licker's argument is that as a matter of Montana law, the statutes addressing the specific relationship between the parties are in the contract. And again, in city court, did it rely on the statutory provisions, the state statutory provisions? No, but I want to be relied on the contract provision, and that's the difficulty I'm having with your argument. I understand. I want to be very, very clear about one thing here, and Lola Licker is not arguing for the application of the Montana default post-judgment interest statute. Montana has a statute, much like 28 USC 1961, that is the default post-judgment interest statute. It's pegged to certain market factors. It changes, and in the absence of some other contractual agreement, it necessarily applies. That is not the statute we're talking about here. We're talking about a statute that specifically is addressed at what happens when the state of Montana breaches a public contract. I understand that distinction. I wasn't saying that the default statute applies. My question is whether Montana law applies at all if the parties have not put some language in the contract that clearly indicates that they have agreed not to be subject to the federal default statute. Can I talk? The best case was city court, and in city court, there was a clear indication that they did not intend to be bound by the federal statute because they put the actual interest rate in there. I actually think this exact question has been addressed by the Montana Supreme Court in the line of cases where they expressly incorporate statutory provisions that are directed at a party's relationship into that contract. I think the clearest example of that is in the WIRED case, which we talk about in our brief. In that case, a workers comp claimant entered into a settlement agreement with the workers comp insurer that reserved future medical expenses that were related to the workplace injury. It didn't have any sort of time limitation on it. It was open-ended. Six years later, the injured worker applied for additional medical benefits that were related to his original injury, and the insurer said no because there's a law out there that says if you go five years without treatment, it's presumed closed and you can't get any future medical benefits. That went to the Montana Supreme Court, and the Montana Supreme Court agreed with the insurer, and it said that this statute that addresses the relationship between the parties is part of the contract. I mean, it's not like they refer to these statutes to determine the party's intent, or they refer to the statutes to determine what the party's intended to do. It's literally they are part of the contract. So just because the parties dispute what their intent was doesn't mean the court can't decide as a matter of law and applying Montana law that the statute directed at this relationship is literally part of the contract. Well, how do you determine what statute is part of the contract if you all don't agree on what statute applies? Well, I'm okay if we incorporate the 2-9-317 in there because the statutes actually talk about each other. So there is a relationship between the two statutes. Indeed, 2-9-317 starts out, except as provided in 18-1-404, no interest may be assessed against the state if it's paid within two years. So I think we have to look at what the Montana legislature was doing in 1997 when they amended the law. The title of the bill is literally an act providing for post-judgment interest when the state breaches a contract, and the state doesn't have a good answer for why that shouldn't apply. But the problem is you say the intent of the parties was to incorporate one statute, and the state says the intent of the parties was to incorporate a different statute. So if there's no agreement regarding that, then it's not part of the contract because you can't agree which statute applies. You might have a different case if both of you agreed as to which statute applied, but the argument, in my view, is weakened by the fact that you two are advocating that two different state statutes are incorporated into your contract. I mean, to the extent that we disagree, I understand where you're coming from, Your Honor, but we both agree that one of these two Montana laws should apply. Nobody is arguing for the application of the default post-judgment interest statute. Is that really what you're saying, or are you saying that you both agree that Montana law applies, and that your agreement because of how it was, your settlement agreement, and then the agreement that the issue be decided by the, could be decided by the Montana Supreme Court, isn't what you're saying that you are only disputing how the statutes are interpreted? I mean, you've agreed, am I missing something here? Or do you agree that you need to have this argument about the Montana law being incorporated into the agreement to get around 1961? I think there's a little bit of both, if I understood your question correctly. I think the settlement agreement sort of informs the analysis about what the parties agreed was in the contract, because the parties agreed in a settlement agreement, which this isn't about whether the statutes were incorporated in the settlement agreement. It's about the earlier underlying contract that was breached, right? Well, I don't know that that is right. The settlement agreement establishes on its face, it talks about compensatory damages, prejudgment interest, and attorney fees, which are, again, attorney fees are provided for in contract actions against the state in 18-1-404. So implicitly, the state recognized that the provisions of that statute applied. But I want to go back to this intent thing for just a minute. As a matter of Montana law, statutory law, 28-3-301, Montana says a contract must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, as far as the same as ascertainable. And then 28-3-303 in the same part says when it's reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. Nobody's made any... In the contract, did you say that the interest rate was to be established under state law? Because the state law says it's incorporated, the statutes addressing this are incorporated into the contract. Again, Your Honor, this would be... We're not arguing for the application of a default Montana statute. This is very specific. It only involves cases where the state breaches a contract. And I understand that it's a weird... It doesn't come up very often because normally it's not going to be worth fighting about, but we've already run up under Lola Licker's argument, $500,000 worth of interest. I'm familiar with this case. I was on a prior panel involving this. I remember, Your Honor, and you were correct then. However, I see I'm to the point where I'd like to reserve my time unless there's any more questions. That's fine. We'll hear from the state. Thank you. I would ask counsel for the state to address all your arguments so we just have one rebuttal. I think that makes sense. May it please the court. I want to start first with the discussion of the Citicorp case. First, I would note that we're in a unique position where both parties actually asked this court to do the same thing, apply state law and not federal law. And in all of the cases citing 28 U.S.C. 1961, I didn't see any such agreement. But I don't think Citicorp's holding is limited to just what was in the contract. In fact, I believe the holding more rests on what the parties intended. And I think that because the court does reference the promissory notes that established the post-judgment interest. But it also notes the complaining party's acquiescence to the arbitrator's award, which happened after the notes were signed. In other words, the court does look to conduct of the parties after the contract is signed to determine what their intent is for post-judgment interest. Here, Lolo Licker and the state have different arguments. Could you clarify one thing for me on this issue that you just articulated that occurred in the district court? Was there any dispute in the district court that this was the party's agreement? That state law would apply as opposed to federal law? Yes. No. In fact, as Mr. Kadatik stated in his brief, the settlement agreement, although not crystal clear because we didn't being what it is today, referenced that the parties believe state law applied. We just weren't sure which statute of state law. Okay. And did the district court say, well, I recognize they've got this agreement, but I'm just, it doesn't have any effect. We have to apply the federal statute. Your honor. I think it was that simple. I think he said that based on Citicorp and because there was not an express agreement in the agency franchise agreement to apply state law post-judgment interest. He's not looking any further. I don't think it's as simple as that. And I don't think Lolo Licker does either. Okay. But, but did he, I don't recall, it's been a while since I looked at this, but I don't recall, did he explicitly say there's no express agreement and therefore I'm not going to, I'm not going to apply. Yes. I'm not going to acknowledge the agreement. I think that's an accurate paraphrasing of what the judge hadn't held in the district court. Okay, go ahead. In Citicorp at page 1107, it cites the general rule. In diversity action, state law determines the rate of pre-judgment interest and post-judgment interest is governed by federal law. So hence section 1961 would be triggered. And so there would have to be an exception to the application, the general rule that post-judgment interest is governed by federal law. And here it was because the parties agreed on the interest rate in the promissory notes, including the rate that would apply in the event that Smith defaulted on the notes. So there was a, an explicit agreement between the parties on what the interest rate would be. And it was not the federal interest rate that would apply in section 1961. And I, that's the difficulty I'm having with both of your argument is I think that a little more specificity is required other than the fact that you agree that state law should apply, by which we're not bound by the way, we're not bound by the agreements of the parties, if it's not consistent with the law. Understood your honor. And I would also say that continuing into page 1108 of that decision, the ninth circuit, this court also references the complaining parties, the defendant's acquiescence to the arbitrator's later award, applying the interest rate agreed among the parties as evidence of their mutual intent. And so. Exactly, exactly. But that award mirrored the language of the parties where they had set forth a specific interest rate that was not the federal interest rate. Understood. Their intent for an interest rate other than the federal interest rate. I think the focus should be on what the parties intended and not necessarily whether it was spelled out letter for letter in the agreement. And here both parties agree that they intended for state law to apply. So I'm not sure why we wouldn't apply state law. I understand there's a rule that the general rule, not the absolute rule, but the general rule that 1961 applies. But here both parties to the agreement want state law to apply. And so I think that establishes their mutual intent to apply state law. And if I may, I will then move on to the conflicting statutory provisions. And my apologies. One of the panel members asked, how do we apply state law or state law being incorporated into the contract? If we haven't agreed which state law applies. Again, the state's position is not that the entire Montana Code annotated was incorporated into the contract, but instead the state law does control post-judgment interest. We obviously have two conflicting views of which statutes apply. There is Montana Code annotated 29317 and Montana Code annotated 18144. 29317 expressly states that the state does not have to pay post-judgment interest if the judgment is paid within two years, except as provided in Montana Code 181404. Now the language of that actually is pretty clear. The state doesn't have to pay interest if it pays the judgment in two years, but for the exception. The reason for that is obvious. It's set forth in our brief that our legislature convenes once every two years and it cannot pay judgments until it convenes. And if the state's liable for interest in that interim period, it would be penalized with having to pay interest that it cannot pay until the legislature gets together once every two years. So 29317 recognizes we have a biannual legislature. It makes it incumbent upon the next legislature that convenes to pay the judgment or else be liable for interest. The policy is pretty clear and pretty sound. Now 181404 states that while the state is in breach of contract, it owes interest at the rate of 10 percent per annum. What that means in the plain language of that statute is that while the state is in breach of contract, it owes interest at 10 percent. Not if the state breached the contract or was in breach. It's while the state is currently in breach of a contract, interest accrues at 10 percent per annum. Now here's how these two Supreme Court in the Blanton case addressed 29317 and 181404. And it stated that 29317 applies to both pre- and post-judgment interest. That is, under 29317 the state is never liable for pre-judgment interest or post-judgment interest except as provided in 181404. Now 181404 discusses the situation where the state is currently in breach of contract. So while the state is in breach, it owes interest at 10 percent. But once the state is no longer in breach, for whatever reason, and in this case when the contract claim gets converted to a judgment, the claim merges with the judgment. And the state now owes money on the judgment, not the contract. So 181404 allows pre-judgment interest on a contract claim. But once the contract claim is converted into a judgment, the merger doctrine applies. And now Lolo Licker's rights are based on the judgment. And 29317 expressly states that no interest is owed on 181404. That statute expressly contemplates the state currently in real time. One could read Blanton a little bit differently. Correct. Can you provide some context? Well, in the discussion about this issue, in its decision, it talks about, it says, quote, this conclusion is necessarily reached in light of our determination that the present suit involves no contractual claims brought under the written assignment. That's correct. So let me. What did they mean by that? So in Blanton, no contract was involved. As a threshold for 181404 to apply, there has to be a contract somewhere. That's a threshold question. If there's no contract involved, analysis is over, and 181404 doesn't apply. So what the Montana Supreme Court is saying is necessarily there's no contract. So 181404 can't apply. But what it says earlier is that once the claim is converted to a judgment, that is what the state owes money on, not the claim. And once it owes money on the judgment, 29317 precludes the assessment of interest if it's paid. Well, they seem to say that their decision might be a little bit different if there had been a contract involved. I disagree, Your Honor. It says this is necessarily so. In other words, to further buttress our opinion, but our opinion is not based on the fact that there's no contract. It's just saying without a contract, we absolutely can't get the 181404, but we're not getting there anyways because this is a money owed on a judgment, not a contract. Then your argument is the excerpt from the opinion that Judge Paya has just read. This conclusion is necessarily reached. It's just superfluous language. That doesn't sound like it to me because of where it appears in the opinion and how it's described. This conclusion is necessarily reached in light of our determination that there isn't a contract. Correct. And that's a threshold question is whether there's a contract. If there's no contract, the court necessarily has to determine that 181404 doesn't apply, but the analysis doesn't end there. The next question is, is money owed on the contract or the judgment? And the court in Blanton expressly stated that if money's owed on the judgment, then 29317 precludes the assessment of interest if it's paid within two years. So again, I understand that's your argument. I just am questioning how much help Blanton is to you given that language. Oh, I think that what the court is just making clear is my point that a contract is necessary for 181404 to apply, but that wasn't the basis for its holding. And I don't read this at all to say they would have reached a different conclusion if a contract was involved. They concluded that once it's a judgment, there isn't a contract involved. That's the merger doctrine. And I must say that Lolo Liquor has never addressed that doctrine either at the district court level or in their briefing in front of this court. But the merger doctrine, which Montana has adopted, expressly states their different obligations. And 181404 contemplates money owed on a contract, which once a judge hadn't entered the judgment in November of 2019, the state of Montana no longer owes money on a contract. It owes money on a judgment. Just the last two points I would address. Could we just go back to the language of the statute 18-1404 for just a second? Sure. So the language that was added or when it was recently revised, let me just read the sentence. If the contract is subject to a good faith dispute brought before a government agency or before a court, the interest rate is 10 percent simple interest each year, whether due before or after a decision by the government agency or court. Now, doesn't that say it seems to me that what they're saying is if it doesn't make any difference. If there's a court judgment or a court decision, the interest rate is 10 percent. I respectfully disagree. First, I would say that if the legislature wanted to use the word judgment, they would have. In fact, they did in 29317 by expressly saying the word judgment. Second, I think this case is a great example. In December of 2018, this court determined that the state breached the contract with Lolo Liquor. That was a decision by a government agency or court. It wasn't a judgment. It was a decision. So even after that decision, prejudgment interest continued to accrue until the judgment was entered in November of 2019. Now that we have a judgment, 29317 applies and says no interest accrues if the judgment is paid in two years. But replacing the phrase government agency or the decision by a government agency or court with the word judgment, I think is improper. As Lolo Liquor argued, previous versions of this and the legislative history shows they contemplated using the word agency or court. And again, this case is just a perfect example of where we had such a decision in 2018. Interest continued to accrue until judgment was entered in November of 2019. So again, go ahead. Go ahead, judge. I was just going to ask how how do you deal with the title of the the legislation and act making the state judgment for interest in attorneys fees in a intent is? I cut you off. No, I think the intent is the language that actually makes it into the statute. First, I don't have the actual provisions cited by Lolo Liquor, although I think they might have cited some legislative history that ultimately wasn't incorporated. But regardless, look at the plain language of the statute. Blanton has said that 29317 is unambiguous and that's the statute we use. And as far as 18144, there's no implication in the plain language of the statute that says it applies to after judgment. It talks about court orders and decisions. And again, that's completely different from a judgment, as this case clearly shows. So let me ask you this. If we assume for a moment that your agreement applies to get around the federal statute and your agreement was to apply this, the state laws. And one of the arguments is that there's no clear ruling from the Montana Supreme Court. Should the case be certified to the Montana Supreme Court? So, your honor, if it wasn't clear, I think that would be an option. But in my view, Blanton makes it perfectly clear that 29317 applies to post-judgment interest in all state cases. So I don't think it's unclear to the point of having to certify the question to the Montana Supreme Court. I think they've answered it in Blanton. Okay. I want to make sure you had a chance to make all your arguments because I want to then have counsel just rebut everything. Yeah, your honor. Again, I would just point out that if we get to state law, I think the two statutes we're referencing work perfectly in 404 allows low-low liquor to pre-judgment interest, which is encompassed in the settlement agreement we've reached. Once judgment was entered in November of 2019, but effective of October 1, 2019, interest does not accrue and is not assessed if the state pays it when the legislature convenes in 2021. Thank you. Okay, great. We'll hear the final argument. Two points, your honors. First, I want to go back to Judge Robinson's point about whether the court is obligated to apply state law or federal law. I don't dispute that if there's nothing in the contract about post-judgment interest, of course, the court should apply 28 U.S.C. 1961. I think that maybe we haven't been fully clear about how strongly the Montana Supreme Court holds that laws existing at the date a contract is executed are as much a part of the contract as if they were set forth there, and that is in Earls versus Chase Bank. This court cited it in the unpublished opinion about the breach of contract matter, and the Montana Supreme Court couldn't... Of course, we're not bound by unpublished opinions. No, I understand. Well, that would be a law of the case argument from this case, but the Earls really talks about how the laws are part of the contract. Again, they're literally written into the contract. Second of all, Blanton. I agree with everything the court has said about Blanton, but I also think there's another statement by the Montana Supreme Court in Blanton that is very illuminating, and that is, it said, the Montana Supreme Court found that the district court's, quote, conclusion that interest should be assessed under 18-1-404 is consistent with its determination that the class's claims arose, at least in part, under the written assignment and were contractual in nature. The Montana Supreme Court reversed on the theory of liability and converted what had been a breach of contract judgment into a tort judgment, and that is why it applied 2-9-317 while specifically noting that the district court would have been correct about 18-1-404 in post-judgment interest if it was correct about the breach of contract claims. Finally, and I'm almost out of time, Judge Pius, if the court were to certify this to the Montana Supreme Court, we wouldn't oppose that. We recognize that in our settlement agreement that that was an open question because there's not great Montana law on this point, but low liquor would ask if that's something that the court is considering, that it consider a two-part question, and the first question is whether these statutes are incorporated into the contract, not whether, that's the threshold question we believe that the court must answer, not whether state law or federal law applies, but what does the contract say because low liquor's argument hinges on the Montana law that these laws are part of the contract itself, not that the district court should have applied these laws because it was bound to apply state law because it was sitting in diversity or supplemental jurisdiction, I mean. So it's, we disagree on why state law applies, and low liquor believes that's important because if the state doesn't get past the first part, then we think the district court should be affirmed before the government should prevail on its theory. Okay, I'll think about that. We'll think about that. Okay, counsel, thank you very much. I appreciate, we appreciate your arguments this morning. It's a very interesting case, very helpful. It's been, the circuit has seen it several times, so we'll continue on with this journey. Thank you, and the matter is submitted at this time, and I believe that ends our session for today. For this session, stands adjourned. Thank you.
judges: Paez, Rawlinson, Antoon